**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **C.W., E.P., and L.P.**

**No. 21-0974** (Webster County 21-JA-20, 21-JA-21, and 21-JA-22)

**MEMORANDUM DECISION**

Petitioner Mother Z.W., by counsel Andrew B. Chattin, appeals the Circuit Court of Webster County's November 3, 2021, order terminating her parental rights to C.W., E.P., and L.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Andrew Waight, filed a response in support of the circuit court's order. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the filing of the instant petition, the DHHR filed a child abuse and neglect petition against petitioner in April of 2015 due to substance abuse and deplorable home conditions. Petitioner was adjudicated as an abusing parent and, eventually, chose to voluntarily relinquish her parental rights to the older child rather than participate in an improvement period.

The DHHR filed the instant petition in June of 2021, raising nearly identical issues as the previous petition. Specifically, the DHHR alleged that petitioner's home was in deplorable condition with portions of the ceiling falling down, trash and old food scattered throughout the home, garbage and various items scattered outside of the home, cockroaches in the home, and a

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

broken ladder leading to an upstairs floor. A Child Protective Services ("CPS") worker spoke with petitioner, who agreed to submit to a drug screen and admitted that she would test positive for marijuana. Upon submitting to the screen, petitioner tested positive for amphetamines, methamphetamine, and ecstasy, in addition to marijuana. The DHHR further alleged that the CPS worker was provided with text messages sent from petitioner to an acquaintance wherein petitioner stated that she did not need drug treatment, that she "cho[]se" to abuse drugs, and "cho[]se" to sell drugs. Petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in August of 2021. Petitioner failed to appear but was represented by counsel. At the conclusion of the hearing, the circuit court adjudicated her as an abusing parent upon finding that she failed to correct the conditions of abuse since the prior case, was addicted to controlled substances, and failed to provide suitable housing for her children.

The circuit court held a dispositional hearing in October of 2021. The DHHR presented the testimony of a service provider, who stated that she attempted to provide services to petitioner but petitioner was noncompliant. According to the provider, petitioner attended one session in July of 2021 and thereafter failed to attend other sessions. The provider explained that petitioner had agreed to a set schedule of weekly sessions on Tuesdays but petitioner missed at least ten of those scheduled sessions throughout August and September of 2021.

A CPS worker testified that petitioner submitted to only one additional drug screen after the petition's filing, which was also positive for methamphetamine, amphetamines, and marijuana. The CPS worker testified that a service provider attempted to contact petitioner at her home on multiple occasions to assist petitioner in submitting to drug screens, and that petitioner was never home and/or never responded to her attempts at contact. Due to her failure to submit to drug screens, petitioner was prohibited from visiting the children. Petitioner also failed to maintain contact with the CPS worker. As such, the CPS worker testified that the DHHR's recommendation was that petitioner's parental rights be terminated.

Petitioner testified that she did not attend the adjudicatory hearing because she was not aware it had been scheduled. Petitioner also claimed that she did not attend drug screens because she did not have any transportation and that she missed a parenting class because she had been exposed to COVID-19. Petitioner denied that she had a drug abuse issue and denied sending any text messages indicating that she abused or sold drugs. Petitioner stated she would test negative for all substances if screened and that she would comply with services and would attend long-term inpatient drug treatment if required. Petitioner admitted that she was living with a convicted felon. She further admitted that she had been employed part-time for the past two months and that she passed by the DHHR office on her way to and from work but never stopped to talk to any CPS workers or to submit to a drug screen. Petitioner admitted that a service provider had come to her home on one occasion but stated the provider simply taped a note to the door and did not knock. Following her testimony, petitioner submitted to a drug screen, which was positive for methamphetamine, amphetamines, and marijuana.

The circuit court found that petitioner's testimony was not credible and was, in fact, false as she testified that she would test negative for all substances but did not. The court further found that petitioner failed to participate in services and hearings. The court considered petitioner's

voluntary relinquishment of her parental rights to an older child when faced with involuntary termination. The court further found that petitioner's claim that she could not attend services and drug screens due to a lack of transportation was "incredible" as her testimony established that she was able to "do everything [else] she wants to" and sought transportation from friends and family for other reasons. Ultimately, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the circuit court's November 3, 2021, dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period. Petitioner argues that she was willing to correct the conditions of abuse and neglect and testified as to her willingness to participate in an improvement period at the dispositional hearing. Petitioner indicated that she had not fully complied with services due to transportation issues and that, while she denied having a drug issue, she was willing to enter long-term inpatient treatment. Petitioner avers that the circuit court erred in employing termination, "the most drastic action," without first considering less restrictive alternatives. Petitioner "believe[s] there was a reasonable likelihood that [she] would have corrected the conditions of abuse and neglect as she was willing to comply with all directives of the [c]ourt."

This Court has held that "a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000).

---

[2]The father of E.P. and L.P. voluntarily relinquished his parental rights to E.P. and L.P. The permanency plan for E.P. and L.P. is adoption by their foster family. Paternity for C.W. was not established until sometime after petitioner's parental rights were terminated. According to the guardian, C.W.'s father's parental rights remain intact, although the father is now the subject of abuse and neglect proceedings. Should reunification with the father not occur, C.W.'s permanency plan is adoption in the same home as his siblings.

West Virginia Code § 49-4-610(3)(B) provides that the circuit court may grant a parent an improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." Further, we have stated that a circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Here, we find that the circuit court did not abuse its discretion in denying petitioner an improvement period. The record is clear that petitioner was offered services such as parenting and adult life skills classes, random drug screens, and supervised visitation but she failed to consistently avail herself of any such services. Petitioner attended only one parenting and adult life skills class with her service provider and blamed her lack of participation thereafter on transportation issues. However, petitioner was able to obtain rides to go other places and the DHHR attempted to provide transportation to petitioner multiple times but could not reach her either in person or by telephone. In light of this evidence, we decline to disturb the circuit court's determination that petitioner's testimony was not credible. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

Moreover, the record establishes that petitioner failed to submit to nearly all scheduled drug screens and claimed that she did not have a drug abuse problem. Petitioner submitted to only three screens during the proceedings and tested positive for numerous drugs on each occasion yet continued to deny that she had a drug abuse problem. This Court has previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Accordingly, given petitioner's willful failure to participate in services and her failure to acknowledge her drug abuse issue, we cannot find that the circuit court abused its discretion in denying petitioner an improvement period. Petitioner is entitled to no relief in this regard.

We likewise find no error in the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental, custodial, and guardianship rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

Here, petitioner demonstrated an inadequate capacity to solve the problems of abuse and neglect on her own or with help. Petitioner failed to maintain contact with either her CPS workers

or her service providers throughout the proceedings. Service providers attempted to locate petitioner at her home and left messages taped to her door asking petitioner to call them, but petitioner never made contact. Further, both CPS workers and service providers attempted to contact petitioner at the telephone number she provided to them to no avail. Petitioner failed to participate in services or submit to drug screens and, on the few occasions she did submit to a drug screen, she tested positive for drugs. Nevertheless, petitioner denied having a drug abuse problem throughout the proceedings. Moreover, petitioner's failure to comply with drug screens resulted in her inability to visit the children. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Accordingly, there was sufficient evidence for the circuit court to find that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare.

While petitioner argues that the circuit court should have granted her an improvement period prior to the termination of her parental rights, this Court has held:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, we find no error in the circuit court terminating petitioner's parental rights to the children.

Lastly, because the proceedings regarding C.W.'s father remain ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be

strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 3, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn